Good morning, your honor. May it please the court, Rupa Goswami for the government, I would like to reserve two minutes and I will monitor my own time. In this case, the district court erred as a matter of law in permitting, in granting a new trial for the purpose of admitting subjective mental state evidence to bolster a duress defense. What's subjective about that? About? About the, his mental capacity? Well Or his IQ quotient? Well, the defense alleges that this evidence is important to show that the defendant is not an ordinary 35-year-old, that because of his low IQ, he was more likely to feel threatened, and that because of his low IQ, he could see no means of escape even though he was standing alone unobserved in a banquet hall. Why isn't his low IQ just an objective factor that the court can, that the jury can consider? Well, because the goal of admitting this evidence is to show that the defendant has unusual susceptibility to coercion, and this is precisely the type of evidence that this court and three sister circuits have chosen to exclude in a duress defense, because a duress defense asks the question, what would a reasonable person have done, and not what a reasonable person with X, Y, or Z disability would have done based on those factors. In addition here, the court, the government also argues that the court abused its discretion by holding the evidence of defendant's allegedly lower IQ was newly discovered, where defense counsel admits both prior to trial and during trial she had concerns about defendant's lower intellectual abilities. The defendant here was charged with a single crime. He was charged with the crime of unarmed bank robbery, which is a general intent crime. Thus, evidence of defendant's low IQ is irrelevant both as to the charged offense and as to the affirmative defense of duress. Do you think it was inadmissible legally? Excuse me? Was it inadmissible legally? Yes, Your Honor. The government contends that this evidence of defendant's subjective mental state was irrelevant both as to the general intent crime of unarmed bank robbery and to bolster the affirmative defense of duress. So your claim is if the district court had allowed this evidence in at trial, the district court would have committed reverse, well, error that was in admission of it? My argument is that this is not a basis for a grant of new evidence. No, I understand your argument. I'm just stepping back apace and analytically asking you whether you think this was admissible at trial. This would have been inadmissible for the purpose that defense counsel requests. It's not that it's inadmissible for any purpose. As the court in the Second Circuit in Smith noted, perhaps some of this evidence, if sort of parsed out, could be admissible, say, to bolster his credibility as a witness. But in this case, the district court held that this evidence of defendant's low IQ went to the heart of the case. And therefore, the district court, in granting the new trial, did not limit the purpose for which this evidence could be admitted at a new trial. In one of our cases called United States v. Johnson, an opinion by Judge Noonan, Judge Noonan, looking at the factors for establishing the duress defense, said in determining if the fear was well-grounded, the defense does permit the fact finder to take into account the objective situation in which the defendant was allegedly subjected to duress. Why isn't just his low IQ, why isn't that just part of the objective situation the defendant was in at the time? Because that's a subjective factor. It's how he would perceive the events. And what the court in Johnson and other cases is saying is that there's a two-step process here. As to the criminal liability phase, we look at objective factors. We looked at, and this trial did consider factors such as, you know, what violence he may have been threatened with, what interactions he had with these alleged gang members. But the fact that he would see objective factors differently as a person of low IQ than the ordinary person of regular firmness is what the issue is. However, at sentencing, which is the position that Johnson is in, Johnson affirmed the convictions of all three defendants and remanded for sentencing. Now, at sentencing, Johnson does say that all of these factors can be considered as to the weight of the punishment, allowed it. But that, you know, the duress defense actually relieves the defendant of all criminal liability. And therefore, there's a narrow exception for when subjective evidence can be allowed in. And that narrow slice is when the defendant can show that his disability is both gross and verifiable, which here was something that the district court did not find. Let me take another tack. Why isn't this evidence also, why isn't it some sort of evidence of cooperation of his argument? That is to say, the government made, was critical of his so-called duress defense, his age, the young gang members and whatnot. Why doesn't this evidence just sort of corroborate and restore his credibility to some extent? Actually, Your Honor, that's exactly what the Second Circuit addressed in U.S. v. Smith. It said, yes, it can bolster his credibility as a witness at trial. But Judge Tagasuchi listened to all of this. He was there. He watched the defendant testify. He saw the whole trial. He was on top of the whole thing. And he made an assessment after learning of this new information that it would have been, it might have made a difference. It probably would have made a difference, I think, is what Judge Tagasuchi said. Yes. He said that it went to the heart of the case. Right. It would increase the likelihood of acquittal. However, Your Honor. We give a high deference to the district court judge's determination to grant a motion for a new trial. Yes, Your Honor. But the issue here is that for a motion for a new trial, the standard under Walgren is that it must be evidence, one, that is newly discovered. And I'd like to come back to that point, because that is my second point, that this is, in fact, not newly discovered evidence. But also the fact that at this stage in the process, how the jury would react to this information of defendants' low IQ is highly speculative. First of all, I think the question goes to deference. Normally we give a great deal of deference to decisions on whether to grant a new trial or not, even if the reasons are somewhat speculative. Here it disturbed me a bit that we have a district judge who's concluded that the outcome would be different and concluded that the evidence is admissible and then exercised his discretion to grant a new trial. Now, if you denied it, I don't think I'd have a problem affirming it either. But I guess in my philosophy, those types of judgments ought to be given a great deal of latitude by an appellate court one way or the other. Well, Your Honor, I'm certainly aware that I am swimming upstream on this. However, I would like to make it clear that I do also believe that the district court erred as a matter of finding a fact in finding that this was newly discovered evidence, where defense counsel clearly maintained that she was aware of this evidence before trial and that her concerns were renewed during trial and yet failed to develop this evidence. Do you want to save your time for rebuttal? I don't want to cut you off, but I can. Good morning. May it please the Court. I'm James Laughlin, and I represent the appellate, Carlos Escobar. District court judges don't often grant motions for new trial, and as this court has already recognized, when they do, they're entitled to deference from this court on that decision. Most of what the government argues about on appeal concerns the district court's factual findings, and I don't believe that those factual findings should be disturbed because they are not clearly erroneous. It's hard to see how this is newly discovered evidence, though. Can you explain to me why you think it's newly discovered? It certainly was available before trial. It had the witness. Why do you think it qualifies as newly discovered evidence? Your Honor, I think it qualifies as newly discovered evidence, and I'll answer your question and also address the diligence of counsel as well, because I think that they're interconnected. What happened was counsel had Mr. Escobar evaluated prior to trial by a trained psychologist, and that psychologist came back with a decision that indicated that the defendant did not suffer from any significant mental impairment. Counsel accepted that decision and went to trial without pushing the matter further. It was only after the trial when Mr. Escobar's conduct on cross-examination throughout the trial process caused additional concerns to arise about his mental capacity. And why didn't counsel at that point ask for a continuance if he had real concerns about the man's mental ability and seek further counseling? Your Honor, I don't believe that counsel considered that an option at the point of trial where the defendant had already testified and had been cross-examined by the government's attorney that it would have been a realistic option to ask the court for continuance at that point. Why not? Because the evidence was not going to come in through the defendant. It was going to come through the psychologist. That's true, Your Honor. But as Dr. St. Martin's ultimate report reflects, it's not the evaluation that was done with him subsequent to the trial was not a simple process. It involved administering various standardized tests over a period of time. And it's quite possible that if counsel had asked for a continuance at that point, Judge Tagasugi would have granted it, and maybe the evidence could have been presented at the new trial. But I also think that that's something that Judge Tagasugi took into account when he considered whether or not. How long did the trial take? I believe it was two days, Your Honor. Government's counsel was actually the attorney who tried the case on behalf of the government. I'm sure she'd know much better than I. It was 40 days, wasn't it? How long was it? Four months? How long was it before he sought this second opinion? How long after trial? I believe it was between four and five months, Your Honor. But at the same time, at the conclusion of trial, the purpose of going back and getting additional evidence on Mr. Escobar's mental capacity, I believe, was primarily to prepare the court for sentencing. It was only because counsel at that point still had no reason to anticipate that the expert would come back with evidence of such a mental impairment as he ultimately came back with. And therefore, there did not seem to be a need for immediate evaluation the day after trial. I think the only matter that really requires more than a moment of this Court's attention is the government's claim that this evidence was inadmissible for any purpose. And as the Court has already suggested, this evidence is really admissible on at least two theories. One, under Johnson, Mr. Escobar's mental impairment is a gross and verifiable disability that is one of those stark, intangible factors that a jury can take into account when considering and applying a defense of duress. As a separate matter, and I believe that the Government Counsel concedes this, under Smith it's admissible to bolster the contention made by Mr. Escobar that he was in fact subjected to threats by these gang members. At trial, the Government dismissed as absurd the contention that Mr. Escobar, the 35-year-old man, would be, one, targeted by these young gang members, and two, fall prey to their threats. And I think if the jury had learned about his mental impairment, that he was a borderline functioning adult who had limited problem-solving abilities and whose ability to fully comprehend the consequences of his actions, if the jury had learned of that, I believe that they would have been much more likely to accept his version of events. Unless the Court has any further questions, I'd submit. Thank you for your argument. First, I would like to address the issue. The trial was two days. The issue of the defense is relying on the expert report. If you take a look at the government's expert excerpt at 239, you'll see that the report that the defense submits as to the expert, there's actually very little difference between what defense counsel knew before trial and what she knew after trial. What she knew before trial, according to her own declaration, is that the defendant had low-to-average intellect and no mental defect. And that's largely what she knew after trial, that he had borderline intellectual functioning and no mental defect. Based on the information that she had, she should have acted and developed that evidence. As this Court in U.S. v. McKinney has held, evidence that is known but not developed by a party is not newly discovered evidence and cannot stand as a basis for a new trial. Here, the defense counsel either made a strategic decision not to develop this evidence, or she acted out of a lack of diligence. Moreover, I take issue with the fact that defense counsel characterized this as a gross and verifiable disability. According to defense counsel's own expert, the defendant went to normal schools in L.A. all the way through high school. He exhibited normal judgment, speech, he exhibited logical thinking, had normal eye contact, memory, motor skills, and judgment. His alleged raw score of 68 does not mean that he is, in fact, mentally retarded. The testing that was done in this case was very cursory. He immigrated from Mexico and is a Spanish speaker, and yet his score was normed against English test takers. His alleged low IQ did not affect his ability to travel, to attend GED classes, to drive, to get married, to hold jobs, and to rob a bank and escape detection from the FBI for 14 months. This is not the type of case that is a gross and verifiable disability as envisioned by the Court in both Moore and Johnson. Both of those courts make the point that a gross and verifiable disability which will allow insubjective evidence for a duress defense is that type of mental disease or defect that borders on incompetence or lack of criminal capacity. It's not possible that defendant had a stark and tangible gross disability which his defense counsel, who worked with him closely prior to trial, was not able to see. Thank you for your argument, counsel. The case just heard will be submitted. We'll proceed to the next case on the oral argument calendar, United States v. Alcazar. May it please the Court. Gerald Branson on behalf of the appellant, Marshall Alcazar. The question at issue here is whether Alcazar's trial order was deficient in not filing a notice of appeal and whether, but for this deficiency, Alcazar would have appealed. If so, there's a presumption of prejudice and Alcazar is entitled to relief. He claims that prejudice in this case should be presumed because the record shows that he either requested an appeal or that there were non-frivolous grounds for an appeal and that in any event, the facts of this record do not conclusively show that he is not entitled to relief. In deciding these issues, the court, of course, must consider all relevant factors in a given case and whether a rational defendant would have wanted an appeal. Isn't the real issue here whether he asked for it or not? I mean, if he didn't ask for it, as the district court found, then I think you have a hard time getting relief. If there's conflict, and we know there is a conflict in the evidence, then maybe an evidentiary hearing is warranted, but isn't the pivotal question whether he actually requested an appeal or not in your judgment? Yes, Your Honor, I think that is one of the pivotal questions and I think there is substantial evidence in the record supporting the inference that he did request an appeal. He wrote a letter to the judge. We can't settle that here, though. That's an evidentiary conflict. At the very least, he's entitled to an evidentiary hearing. But let's assume for the moment that the district court is right and he didn't ask for an appeal, then why do you think you're entitled to relief if that's so? Well, there were not, for one thing, there were non-frivolous issues that he could have raised. Well, there are a number of factors to be considered in the case where if we assume that he never instructed his attorney to file an appeal, the court is still responsible for considering all the relevant factors. According to Flores or Ortega, these factors include, first, whether counsel had a duty to consult with him. And I think clearly in this case, he had a duty to consult with him, and I think that's apparent. First of all, we have a defendant, Mr. Alcazar, who has no previous criminal record whatsoever. He has no contact with the criminal justice system. He has no idea about how it works. Maybe he doesn't even understand what an appeal is. Secondly, there was an appeal waiver clause, a plea agreement, which both the court and the government refuted at the sentencing hearing. So here's a guy who's completely confused. He believes at the sentencing hearing that he has a right to appeal. So given that, his experience, and what the court and the government told him at the sentencing hearing, I think that counsel had a heightened duty, an elevated duty to consult with him. Now, counsel never specifically said that he consulted with him. And although the judge's ruling misstates that, and I'd like to, that's at page 126 of the excerpts, here defense counsel maintains that he did indeed consult with Alcazar. That, in fact, does not reflect counsel's letter. Counsel's letter says that that was his custom and habit. He never specifically says, I consulted with Alcazar. He said it was his practice to. He said it was his practice to do so. Apparently, he has no recollection. Here again, we're back to an evidentiary hearing. We can't resolve this issue from this record. The issue is whether he actually turned to his lawyer and said, I want an appeal. What we can say, though, is that counsel had a duty to consult with him. We know that from the facts. The second consideration is whether counsel consulted with or reasonably chose not to consult with the defendant. Well, here again, we can't resolve that issue without an evidentiary hearing. And the third factor is whether, but for counsel's omission, the defendant would have timely appealed. And I think there's substantial evidence in the record that supports that. I mean, Mr. Alcazar wrote a letter to the judge saying, you know, I'm waiting for my appeal. I mean, facially reading that letter would certainly give rise to inference that he expected he was going to have an appeal. He was waiting for his attorney to pursue that. He had actually tried to contact his attorney on numerous occasions. He hadn't heard from his attorney. His attorney moved to Minnesota, lost his file, never communicated with him. So I think given all those three factors, I think the court erred in not granting the evidentiary hearing. I think we have your argument at hand. Why don't we hear from the government? You can save your time for rebuttal. Okay.  Timothy Coghlan on behalf of the government. I would begin by just indicating to the court that the court can make a finding on any reason that's supported in the record. And I believe that the court could, even though the court has focused this entire argument here today on whether or not an evidentiary hearing should have occurred, I think the court can step back and, based on the record, could find that the statute of limitations in this particular case was completely blown by by the district court. And I'm not sure if it was a sense of generosity and based on the unfolding circumstances. But the court almost, at the very end, could have gone either way. It basically says there's no real evidence that there was extraordinary circumstances beyond his control. If you look at the letter from Mr. Alcazar and also his declaration, he basically kind of says, I just was kind of waiting around. I didn't have any help. My wife divorced me. Those are the kinds of things that have been continuously found not to be extraordinary circumstances beyond your control that would pull the statute of limitations. I think that counsel completely fails to inform the court that the first letter that Mr. Alcazar sends to the court is three years and three months after the statute of limitations has run. In this particular situation, the court responds within ten days, appoints counsel to look into this matter, and also directs Mr. Robinson to immediately inform it. I think the court, in making this determination, and I think this Court is asking the correct question, assuming that there was some kind of conversation and assuming in this particular situation, should there still have been an evidentiary hearing by the district court. Well, why shouldn't there have been? And I think the reason that the court did not have to have one in this particular matter is because it went through each and every one of the particular issues that was raised in the 2255 and found conclusively that there was no merit to those issues and the defendant was not prejudiced. I think specifically the court was not prejudiced. Well, let's go back, though. We don't know what would be raised on appeal, and it may or may not be frivolous. It's a little bit odd, I think, to say that let's examine any possible issues that might have been raised on appeal and dispense with them. I mean, there are non-frivolous appeals you can make on sentencing guideline issues, particularly when you have an obstruction, an escape like this that involved in this case. There was a reversal on case that was not dissimilar from this where the post-conviction facts were taken into consideration. So I think there probably were some non-frivolous issues for appeal. But the question is, to my mind, why shouldn't the district court have resolved the question of whether he asked for an appeal? If he didn't ask for an appeal, then I think the case is probably over. If he requested the appeal, then we're faced with a different situation. Based on the record, the only response I can give is that the length of time that had gone by is probably the main factor the court relied on and the fact that there was really uncorroborated information. Certainly, if Mr. Alcazar had presented several of those letters, he said one, he said, was returned, and if there was some other corroborating evidence, it would have made more sense. Well, sure, but he would have presented that theoretically at an evidentiary hearing. Well, Your Honor, I think in this particular case, I don't think the court should miss the fact that originally this was a plea agreement. So the particular issues that were available for Mr. Alcazar to take a look at were probably limited. In this particular case, the only benefit he did not get after coming back 11 months after he was supposed to was acceptance of responsibility. In fact, he gained a new benefit at the time of sentencing. He got the safety valve departure because he had no prior criminal record. So essentially, for Mr. Alcazar to say in his declaration, as he does, that he was very unhappy with his sentence is very hard to believe, simply because he got the full benefit of his sentence. The court sentenced him at the low end of the guideline range. There was no new charge filed in the way of a bail jump. So essentially, his attorney argued the issues at sentencing that were appropriate to his case, obstruction and acceptance of responsibility. There were no other issues. The fact that his father was dying and, in fact, had died was presented to the court. So the court was aware of that particular factor and could have departed, certainly within the discretion of the court, under a Kuhn-Cook analysis to depart based on that situation. It chose not to. And I think the court found at the end, after it had gone through all of these issues in its order, in response and in rejecting the 2255 motion, that there was no merit to the defendant's issues that were left on the table. And based on that, there was no need to have an evidentiary hearing. Okay. Any further questions from the panel? No. Okay. Any rebuttal? Yes. Mr. Alcazar was entitled, as a constitutional right, to an appeal. The question is not whether these issues have merit or not have merit. I mean, if he wanted an appeal, he was entitled to an appeal. It's not a matter that the judicial proceeding was flawed or that these potential issues or theoretical issues had no merit. It's more a question that he was denied a proceeding altogether and that if he wanted one, he should have one. He raised the issues late, but in the letter to the judge, he explains that he's been trying to contact his attorney. He elaborates on that in his declaration. In his declaration, he made a lot of attempts to contact his attorney over a period of time. And finally, this man had no, absolutely no experience at all with the criminal justice system. There's no reason to believe that he would have understood if he thought that his lawyer was going to pursue an appeal, as his letter suggests, that he would have then jumped on the timing and understood that he had to act. You understand, of course, if he ends up getting a resentencing, he could end up with more time in prison than he has now, don't you? I understand that. It's your choice. Well, it's his choice. All right. Thank you for your argument.
judges: Hall, Thomas, Paez